## Thomas *v.* Seaman et al., Appellants.

Argued January 9, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel J. Clement,* with him *Franklin L. Kury,* and *Kury and Kury,* for appellants.

*John R. Moore,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 4, 1973:

This action in equity was brought to set aside a deed on grounds that it was procured by fraud and undue influence. The court below entered a decree adjudging the disputed deed null and void and ordering the appellants, Dewey H. Seaman ("Dewey") and Esther L. Seaman ("Esther"), grantees, to reconvey the property to the grantor, Beulah E. Seaman ("Beulah"). As Beulah is now deceased, she is represented for the purpose of this appeal by Joan E. Thomas ("Joan"), executrix of the estate.[1]

This appeal raises the questions whether the evidence supports a finding that Dewey made fraudulent misrepresentations to Beulah inducing this conveyance and whether the evidence establishes the exercise of undue influence.

Our consideration of these questions necessitates a preliminary recounting of the involved factual situation which gave rise to this dispute. Beulah Seaman, eighty-three years old and unmarried at the time of this con-

---

[1] The decree appealed from also ordered the appellants to pay Beulah $115.00 per month from the date of the subject conveyance to the date possession was delivered back to her; that appellants be reimbursed for permanent improvements, repairs, taxes and insurance paid by them during their occupancy; and that appellants return items of personal property over which they retained control during their stay.

veyance, owned a six-acre farm in Middlecreek Township, Pennsylvania. Beulah resided in Selinsgrove, Pennsylvania with her sister until the sister's death in August 1968. With the death of her sister, and the onset of medical and financial difficulties, Beulah became increasingly dependent upon her niece, Joan, the appellee-executrix here. Beulah reposed great confidence in Joan and relied upon her for financial guidance.

After the death of Beulah's sister, Beulah's seventy-two-year-old brother, Dewey, began to visit her daily. On February 11, 1969, while visiting the tenants of her Middlecreek farm, Beulah received a telephone call from Dewey, who announced he was buying the farm. Beulah balked when Dewey indicated that he hoped to consummate the "sale" immediately but Dewey responded he had made an appointment for them to see a Selinsgrove attorney that day and the arrangements "could not be cancelled". Dewey then transported Beulah from her Middlecreek farm to the office of Dewey's attorney. Beulah attempted to ascertain the "sale" price of her farm while enroute to the scrivener's office, but Dewey would not discuss the purchase price; he merely assured Beulah he was "buying" the farm.

When Beulah and Dewey arrived at the office of Attorney Harvey P. Murray, Jr., the deed had already been prepared. Beulah was allowed to examine the document and thereupon questioned why the purchase price was not recited in the deed. She was told that most people preferred not to recite the consideration for the deed on the face of the instrument. When Beulah questioned the fact that the deed vested a present interest in her brother and a remainder in his wife, and expressed the fear that she was not adequately protected by its terms, the deed was redrafted to reserve a life estate in Beulah.[2]

---

[2] "[T]hat is to say, the said Beulah E. Seaman is seized thereof as tenant for life, and the said Dewey H. Seaman and Esther L.

Before signing the deed, Beulah told Dewey she preferred not to act until discussing the matter with her niece, Joan. Dewey replied that Joan "knew all about" the transaction and that she was "delighted" by it. Beulah signed the deed, reluctantly, in the presence of the appellants and Attorney Murray. There was no one present at the signing of the deed either to represent the decedent's interests or give her independent, disinterested advice. On the same day, Dewey met with Joan to tell her he had "purchased" Beulah's farm and that he and his wife, Esther, intended to take care of Beulah. He also confided in Joan that he had misrepresented Joan's approval of this transaction to Beulah.

Beulah's tenants removed, at appellants' request, and Dewey and Esther took possession in March 1969. Beulah resided with her brother and wife from July 1969 until October 1969, when Esther informed Beulah she would have to "make other arrangements". No consideration for this conveyance was ever paid. Beulah left the Middlecreek farm in October of 1969 and consulted an attorney: this action was commenced on February 5, 1970, by the decedent's complaint in equity.[3]

Fraud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim. *Edelson v. Bernstein,* 382 Pa. 392, 115 A. 2d 382 (1955) ; *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 51 A. 2d 759 (1947). To sustain the con-

_____

Seaman, husband and wife, are seized in fee simple of reversion expectant upon the determination of the said estate for life."

[3] The lower court filed its adjudication, voiding this deed, on November 30, 1971. After a petition for rehearing and exceptions to the findings of fact and conclusions of law were dismissed on January 27, 1972, the court entered a final decree, confirming the decree nisi, on February 8, 1972. After Beulah's death, Joan was substituted on April 27, 1972, as the personal representative of Beulah's estate.

clusion of the court below, evidence of appellants' fraud must be clear, precise and convincing. *Aliquippa National Bank v. Harvey,* 340 Pa. 223, 16 A. 2d 409 (1940); *Pennsylvania R. R. Co. v. Shay,* 82 Pa. 198 (1876). The test is met where the witnesses depended upon to prove fraud distinctly remember the facts to which they testify and narrate the details with specificity. *Broida v. Travelers Insurance Co.,* 316 Pa. 444, 447, 448, 175 A. 492, 494 (1934); *Ralston v. Philadelphia Rapid Transit Co.,* 267 Pa. 257, 269, 110 A. 329, 333 (1920). Two witnesses testified, unequivocally, that Dewey told them he had "bought" the farm.[4] Beulah's testimony, though colored by self-interest, is corroborative. It is appellants' position that he did not intend to purchase the farm, but rather to act as caretaker of the property for the remainder of Beulah's life in order to divest her of the burden of its care. In addition to the evidence of disparity between Dewey's unspoken and expressed intent, there is uncontroverted testimony by Joan Thomas, the decedent's confidante, that appellant, Dewey Seaman, misrepresented Joan's approval of the deed to Beulah: "He also told me the time I was there

---

[4] Charles B. Page, tenant on Beulah Seaman's Middlecreek farm prior to the February 11, 1969, deed, testified as follows: "Q. (Direct examination by counsel for Beulah Seaman): Did you have any subsequent conversation with Dewey Seaman or his wife concerning this property? A. Later on with Mr. Dewey. Q. And what was involved in those conversations? A. Well, he said he *bought* the property, and he wanted us to move out by the first of March if possible." (Emphasis added.)

Joan Thomas, in direct examination by counsel for appellee's decedent, offered the following testimony:

"Mrs. Dewey Seaman on Eighth Street at that time called and said my Uncle Dewey wanted to talk to me. So then I decided I would, because they said it would take a few minutes.

"I went there after work. And when I got there, he came in and he said—he clapped his hands—he said he *bought* the home; and I was shocked at first because I didn't expect anything like that." (Emphasis added.)

that afternoon, he said 'I lied to her [Beulah]. I told her you knew about it [the deed].' I didn't learn about it until everything was signed after five o'clock that night."

The materiality of these misrepresentations cannot be doubted. The falsification by Dewey, his statements to Beulah that he intended to provide consideration, was basic to Beulah's decision to "sell" the farm. The fabrication of Joan's approval of the deed is material because Beulah relied upon Joan for financial advice.[5] The extent of Beulah's reliance is underscored by her statement, before signing the deed, that she would not agree to its terms unless she could first discuss the transaction with Joan. We hold that there is sufficient evidence, as a matter of law, to support the lower court's finding of fraud.

The court below also determined that "Dewey H. Seaman [had] exercised undue influence upon his sister Beulah E. Seaman in obtaining the deed" which is the subject of this appeal. "[U]ndue influence which will avoid a deed is such influence as is obtained by excessive importunity, superiority of will or mind, or by any other means constraining the grantor to do what he is unable to refuse. Whether such improper influence was exercised must usually be inferred from the facts and circumstances of the particular case, such as the situation of the grantor and his relation to others, his condition of health and its effect upon body and mind, his dependence upon, and subjection to, the persons claimed to have influenced him and their opportunity to wield such influence. . . ." *Withers v. Withers,* 363 Pa. 431, 434, 70 A. 2d 331, 333 (1950), *quoting from Teats v. Anderson,* 358 Pa. 523, 528-29, 58 A. 2d 31, 33 (1948).

---

[5] *Luther v. Luther,* 216 Pa. 1, 64 A. 868 (1906), presents a strong factual analogy. A son induced his mother to assign to him a right to redeem real estate by representing to her that he had consulted with the mother's legal advisor and her other son. The Court characterized his artifice as fraud.

Appellants state, correctly, that the burden of proving undue influence rests upon the party asserting it unless that party can prove a *confidential relationship* between the grantor and grantee, in which case the burden of proof must shift to the party asserting the validity of the deed to prove it was obtained by the free, voluntary and intelligent act of the grantor. *Dzierski Estate*, 449 Pa. 285, 296 A. 2d 716 (1972) ; *Sendick v. Matvey*, 391 Pa. 286, 295, 138 A. 2d 92, 96 (1957). Here our agreement with appellants' position ends. Appellants assert that appellee's decedent failed to sustain the burden of proof of undue influence. Additionally, since the evidence does not disclose a *confidential relationship* between Dewey and Beulah, appellants contend that the burden of proof did not shift to appellants to prove the deed was obtained by the free, voluntary and intelligent act of Beulah Seaman; and therefore the lower court's determination that the deed was coerced by undue influence cannot be sustained. We disagree.

The decedent's advanced age, her failing health and financial status, the fact of the recent death of the person with whom she made her home, the fact that appellants initiated the transaction with unseemly haste, the oral commitment to a contractual consideration without the commitment of its terms to the written instrument, and the actual fraud of the appellant, Dewey Seaman, all support a finding of substantial coercion sufficient to warrant an inference of undue influence destroying the decedent's free agency. We hold that appellee's decedent adduced sufficient evidence, as a matter of law, to support a finding of undue influence.[6]

Decree affirmed. Appellants to pay costs.

---

[6] We need not consider the issue of whether there is sufficient evidence to establish a *confidential relationship*. This issue only arises if the party attacking the validity of the deed has not adduced evidence sufficient to support a finding of undue influence without the benefit of the presumption arising out of *confidential relationship*.