# Korn v. Avis-Rent-a-Car System, Inc. (No. 2)

*Herbert B. Newberg, Alan Kahn* and *Stanley A. Uhr*, for plaintiffs.

*Harvey Bartle, III, Dennis R. Suplee, G. David Rosenblum, E. Barclay Cole, Jr.*, and *Seymour I. Toll*, for defendants.

KALISH, *J.*, April 21, 1977—

## HISTORY

Plaintiffs, Robert A. Korn and Barry B. Wohlman, have petitioned the court for class action certification in the instant suit involving the validity of a certain contractual provision offered by all of defendant car-leasing companies in their standard car rental agreements. In all of defendants' contracts, it is provided that a lessee will be only responsible for the first $100 of collision damage to a rental vehicle. However, a lessee is then given the option of paying an additional $2 per day fee to avoid this risk. This provision is referred to as the collision damage waiver provision (hereinafter CDW provision) and is the focus of plaintiffs' attack. Specifically, plaintiffs contend that the $2 a day charge is unconscionable and request that the court for this reason enjoin the continuation of the practice and order the return of the difference between the allegedly excessive price and an amount the court determines to have been a reasonable

sum for the CDW provision.[1] Defendants have counterclaimed against unnamed members of the class for damages sustained to their automobiles and unpaid rental fees.

In the present petition, plaintiffs seek to represent "all persons, firms or companies, who within the last six years, entered into automobile rental or lease contracts with one or more of the defendants, within the Commonwealth of Pennsylvania and who, pursuant to those agreements, paid to defendants a fee to protect them against any liability to defendants for the first $100 of collision damage to the rental vehicle." Plaintiffs' amended complaint at 3-4 alleges, "Defendants oppose plaintiffs' request on the grounds that they have failed to demonstrate the appropriateness of class action treatment under the present circumstances."

## DISCUSSION

Class actions in this Commonwealth are governed by Rule 2230 of the Pennsylvania Rules of Civil Procedure.[2]

---

1. Originally, plaintiffs' amended complaint also contained counts which challenged the defendants' offering of the CDW provision as the unauthorized sale of insurance in violation of this Commonwealth's insurance laws. However, in an opinion and order dated February 10, 1977, this court granted defendants' motion for judgment on the pleadings as to these counts thus removing them from further consideration by this court. Plaintiffs appealed this partial granting of defendants' motion to the Pennsylvania Superior Court—October term, 1977—no. 1219. On April 7, 1977 plaintiffs' appeal was ordered quashed.

2. This Rule provides in pertinent part:
"(a) If persons constituting a class are so numerous as to

In Klemow v. Time Inc., 466 Pa. 189, 196, 352 A. 2d 12 (1976), the Pennsylvania Supreme Court enunciated minimum requirements for maintenance of a class action:

"(1) [Plaintiff] is a member of the class; (2) the class consists of persons 'so numerous as to make it impracticable to join all as parties;' (3) '[plaintiff] will adequately represent the interests of all class members;' (4) [plaintiff's] interests are consonant with all members of the class; (5) there is a common issue shared by all class members which can be justly resolved in a single action; and (6) the relief sought is beneficial to all class members. [Footnotes omitted.]" Klemow v. Time Inc., supra, 352 A. 2d at 15-16.

In addition to Klemow's criteria the Civil Procedural Rules Committee of the Supreme Court of Pennsylvania in its recommendation no. 41, 6 Pa. Bull. 1720 (1976), has suggested three other factors which this court finds appropriate for the proper disposition of plaintiffs' motion:

1. [Whether a] class action is superior to other methods for a fair and efficient adjudication of the controversy. Proposed Rules Covering Class Actions 1702(5).[3]

---

make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all. . . ." 42 Pa.C.S.A Rule 2230 (1975).

3. The Supreme Court of Pennsylvania in Klemow specifically noted the possibility of using this factor in class action determinations but was not faced with the question and hence did not decide the propriety of its use: Klemow v. Time Inc., supra, 352 A. 2d at 16 n. 14. See also Bell v. Beneficial Consumer Discount Company, 241 Pa. Superior Ct. 192, 200, 360 A. 2d 681, 685 n. 5 (1976).

2. [W]hether common questions of law or fact predominate over any questions affecting only some individual members. Proposed Rules Covering Class Actions 1706(1).[4]

3. [T]he size of the class and difficulties likely to be encountered in the management of the action as a class action. Proposed Rules Covering Class Actions 1706(2).[5]

Considering the above criteria, this court concludes that the motion for a class action certification should be denied.

There is no substantive definition of "unconscionability" at common law. Nor does section 2-302 of the Uniform Commercial Code (U.C.C.) which codified the concept in the area of sales law define it.[6] Because of this, the section has been used to give the courts greater flexibility in dealing with the mass use of commercial form contracts involving consumers. While no hard and fast rules have

---

4. If common questions did not predominate, the economics of handling essentially separate claims would be prohibitive, thus making class action treatment obviously inappropriate: In re Transit Company Tire Antitrust Litigation, 67 F.R.D. 59, 72 (W.D. Mo. 1975). See also McMonagle v. Allstate Insurance Company, 227 Pa. Superior Ct. 205, 324 A. 2d 414 (1974), affirmed 460 Pa. 159, 331 A. 2d 467 (1975).

5. "[T]he Court may, in appropriate circumstances, weigh the maintainability of the class action against such considerations as judicial economy and efficient administration . . ." Lieberman v. Howard Johnson's, Inc. (No. 3), 68 D. & C. 2d 192, 215 (1974), quoting from McMonagle v. Allstate Insurance Company, supra, 227 Pa. Superior Ct. at 233 (Hoffman, J., dissenting).

6. Section 2-302 provides in full: "Section 2-302. Unconscionable Contract or Clause

"(1) If the court as a matter of law finds the contract or any

been established, underlying general standards or guides have been developed as courts have treated each dispute on a case by case basis. Courts have examined such general considerations as "unfair surprise;" whether the particular clause is unreasonably favorable to the seller or unreasonably unfavorable to the buyer; whether a reasonable buyer would be unaware of such a clause; whether the assent of the buyer to the clause was apparent or real; whether the price disparity was material and substantial; and whether the product involved was a necessity or a frill. Notwithstanding this individualistic approach, wherever the courts have made an attempt to police such contracts and establish guidelines there has usually been some allegation or evidence of misrepresentation, warranty or remedy disclaimer or some commercial abuse involving a low-income or minority consumer. Courts have been careful about this. Otherwise, they would find themselves in the position

---

clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

Although section 2-302 of the U.C.C. deals explicitly only with contracts for the sale of goods, it can be followed by analogy in other contractual disputes: Albert Merrill School v. Godoy, 78 Misc. 2d 647, 357 N.Y.S. 2d 378-380-81 (Civil Ct. N.Y. Co. 1974); United States Leasing Corporation v. Franklin Plaza Apartments, 65 Misc. 2d 1083, 319 N.Y.S. 2d 531, 535 (Civil Ct. N.Y. Co. 1971).

of adopting judicially burdensome policies which would increasingly involve them in the regulation of commercial transactions. They were fearful of becoming, in effect, regulatory bodies, controlling all types of economic behavior including the setting of prices. See generally, John E. Murray, Jr., Unconscionability: Unconscionability, 31 U. Pitt. L. Rev. 1 (1969-70); Robert Braucher, The Unconscionable Contract or Term, 31 U. Pitt L. Rev. 337 (1969-70); Arthur Allen Leff, Unconscionability and the Crowd, 31 U. Pitt L. Rev. 349 (1969-70).

In the instant case, fraud is a constructed one, arising simply out of the allegations of an exorbitant price.[7] The price term in the contract is different from other possible unconscionable terms. It is not inherently evil, such as some of those mentioned above. The reasonableness of the price term is relative to a determination of what is a fair return on an investment and the amount of the investment itself. This requires an ad hoc determination of value with regard to the relevant market.

Although there is some case law to the contrary, "[T]here is no indication that the drafters [of section 2-302] ever considered price-value disparity as an

---

7. When allegations in the nature of fraud are present, the maintainability of a class action in Pennsylvania is doubtful since: "The successful maintenance of a cause of action for fraud includes, inter alia, a showing that the plaintiff acted in reliance on the defendant's misrepresentations. Thomas v. Seamans, 451 Pa. 347, 304 A. 2d 134 (1973); Savitz v. Weinstein, 395 Pa. 173, 149 A. 2d 110 (1959); Edelson v. Bernstein, 382 Pa. 392, 115 A. 2d 382 (1955). Because such a showing would normally vary from person to person, this cause of action is not generally appropriate for resolution in a plaintiff-class action." Klemow v. Time Inc., supra, 466 Pa. 197, 352 A. 2d at 16 n. 17.

element of unconscionability." Section 2-302 and the Pricing of Goods, 33 U. Pitt. L. Rev. 589, 599 (1972).

An analysis of the issue and the nature of the proof required is always relevant to the class issue: Abercrombie v. Lums Inc., 345 F.Supp. 387 (S.D. Fla. 1972). Such an analysis shows why this kind of case is particularly unsuitable for a class action.

The consumer raising the question of unconscionability must establish a prima facie case. He does this by showing that the contract price of $2 per day substantially exceeds the price he would otherwise pay *in his relevant market*. What standard is to be applied? Is the standard to be applied a variable one that takes subjective facts into account as to each lessee in order to achieve fairness in passing on the private efforts of the parties to allocate the risks involved? Or is the standard to be applied the objective one of the reasonable man? If the objective test is applied then we are not getting away from the evils which the doctrine of unconscionability in consumer contracts was designed to correct. One writer, John E. Murray, Jr., supra, focuses on apparent and real assent by the consumer and in this connection indicates that an important consideration would be whether the subject of the contract was a frill or necessity. If the former, then a decision to "take it" involves real assent because individuals can survive without frills. If a necessity, then the seller would have to justify the term as commercially reasonable. One can see at once the myriad of problems arising as to each consumer.

Once plaintiff establishes his prima facie case of unconscionability, the burden then shifts to defendants to persuade the court that the contract

term was conscionable at the time of contracting, i.e., that defendant's behavior was commercially reasonable. From each of the seven defendants in this case, this would require a detailed disclosure of actual costs allocated to the transactions in order to ascertain net profits. The net profit would then be compared with the net profits of similarly situated lessors, engaged in the same service. Each company defendant would present a different factual problem. If the standard to be applied to the consumer is a variable one and each company defendant presents a different factual problem and the underlying issues are economic primarily, it is at once apparent that it is not a fit subject for a class action. It lacks the community of interest requirement. Common questions do not predominate.

While sub-classes or issues may be certified separately, the highly diverse nature of the issues would prevent a sharp definition of sub-classes.

This problem would be further complicated in the instant case due to the large time span from which class membership is to be derived. Plaintiffs seek to represent people who have chosen the CDW provision with defendants over a period of six years. Over this period, it is alleged that the $2 charge for the provision has remained constant. However, other factors in our economy have not. Accordingly, this court would be forced to calculate the propriety of this charge against an ever-changing economic background. Such an exercise would be extremely difficult for a trained economist. It is an improper task for a court in a class action suit.

Additionally, it should be noted that in virtually all cases which have dealt with affirmative unconscionability of price, plaintiffs' cause of action has been based, at least in part, on state consumer pro-

tection statutes which authorized such suits. See, e.g., Kugler v. Romain, 58 N.J. 522, 279 A. 2d 640 (1971). Cf. Vom Lehn v. Astor Art Galleries, Ltd., 86 Misc. 2d 1, 380 N.Y.S. 2d 532, 541-43 (Sup. Ct. 1976). However, the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter Consumer Protection Law, of December 17, 1968, P.L. 1224, as amended, by November 24, 1976, P.L. 1166, 73 P.S. §201-1 et seq., which plaintiffs have cited, did not specifically authorize private actions such as this until November, 1976: Act of November 24, 1976, P.L. 1166, sec. 9.2. Thus, the class which plaintiffs seek to represent consists of people all of whom transacted business with defendants before private suits were ever permitted under Pennsylvania's Consumer Protection Law.[8] Furthermore, section 9.2 of the amended Consumer Protection Law allows for private consumer fraud actions only for "any person who purchases or leases goods or services *primarily* for *personal, family* or *household purposes* . . ." Consumer Protection Law, as amended, supra, 73 P.S. §201.9-2 (1976) (Emphasis supplied). As a result of this limitation, the court would be called on to discover which members of the putative class rented automobiles for primarily personal use—a rather large task for a class which could easily number 1,000,000 members.

---

8. The Pennsylvania Statutory Construction Act provides in pertinent part: "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Act of December 6, 1972, P.L. 1339, sec. 3, 1 Pa.C.S.A. §1926. No such intent is found in the amendment to the Pennsylvania Consumer Protection Law authorizing private suits.

Another problem with permitting this matter to proceed as a class action derives from the presence of defendants' counterclaims against unnamed members of the putative class for damages to rented automobiles and unpaid rental fees. Defendants suggest that the resolution of these counterclaims, properly pleaded in this action, would, of necessity, unjustifiably bog down this litigation with individual issues which would not concern the whole class. Thus, it is argued, the use of the class action device here would prove totally unworkable.

The instant controversy is quite similar to that confronted by a New York Federal Court in Cotchett v. Avis Rent-a-Car System, 56 F.R.D. 549 (S.D.N.Y. 1972). In Cotchett, plaintiffs sought to bring a class action against three car rental agencies in New York City attacking the validity under the Federal antitrust laws of a $1 surcharge defendants were imposing on all rentals to cover parking violations for which car rental agencies were responsible under a recently enacted city ordinance. In response, defendants counterclaimed for, inter alia, "uninsured damage to rented vehicles." Id. at 551. In refusing plaintiffs' motion for class action status, the Cotchett court stressed that the presence of the counterclaims rendered the matter unmanageable as a class action: Id. at 553. Cf. Lieberman v. Howard Johnson's, Inc. (No. 3), supra, 68 D. & C. 2d at 215.

Plaintiffs would dispute the applicability of Cotchett and instead would have this court certify the class and then refuse to permit the counterclaims to be litigated along with plaintiffs' claims. Plaintiffs' reply brief at 21. In support of this position plaintiffs cite Donson Stores, Inc. v. American Bakeries Company, 58 F.R.D. 485

(S.D.N.Y. 1973), where counterclaims were dismissed in a Federal class action. However, the explicit reason given for this ruling was that under the Federal Rules of Civil Procedure, nonintervening class members are not considered *parties* to the action: Id. at 489. See also In re Sugar Industry Antitrust Cases, 73 F.R.D. 322 (E.D. Pa. 1976); Dennis v. Saks & Co., 20 F.R. Serv. 2d 994 (S.D.N.Y. 1975). In contrast to this position, the Pennsylvania Supreme Court has declared that class members *are* considered *parties* to an action from its inception: Bell v. Beneficial Consumer Discount Company, 465 Pa. 225, 348 A. 2d 734, 736 (1975). Defendants' counterclaims appear proper under Pa.R.C.P. 1034, and therefore this court concludes that the approach taken in Cotchett is the appropriate one for the instant situation and that class members may be required to come forward on the counterclaim.

In this Commonwealth "[t]rial courts are vested with board discretion in determining . . . the propriety of maintaining the action on behalf of the class." Klemow v. Time Inc., supra, 466 Pa. 197, 352 A. 2d at 16. For the reasons already stated above, this court, in its discretion, is of the opinion that the maintenance of *this* suit as a class action is not superior to other methods for a proper adjudication of plaintiffs' grievances; common questions of law and fact do not predominate; and the size of this class—potentially 1,000,000 persons—makes the management of this matter unduly burdensome on the court system. This court is aware of the remedial purposes class actions are intended to effectuate: Matthews v. Krebs & King Chrysler-Plymouth, Inc., 121 Pitts. L.J. 215, 216-17. Nevertheless, not every alleged small grievance

should become the basis of an involved, time-consuming court action. This court agrees with the Cotchett court which stated:

"While class actions may represent the only available means of redress for consumers whose claims are too small individually to render legal action economically feasible, and while private enforcement of the antitrust laws in consumer transactions may provide an important deterrent to potential violators, such factors must be weighed, along with all other benefits to the class, against the costs of such an action, in terms of convenience and fairness to all involved." Cotchett v. Avis Rent-a-Car System, Inc., supra, 56 F.R.D. at 552-53.

After weighing all of the factors suggested in Klemow v. Time Inc., supra, and the proposed rules governing class actions, supra, it is concluded that plaintiffs' motion for class action certification should be denied.

Order affirmed, per curiam, by the Superior Court: ____ Pa. Superior Ct. ____, 387 A. 2d 119 (1978).