J-A29021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CAROL SHINER ROSENBLOOM, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RICHARD C. ROSENBLOOM, M.D. | : : : : : | No. 621 WDA 2019 |

Appeal from the Order Entered March 1, 2019,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  No. 021604661.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED FEBRUARY 14, 2020**

Dr. Richard C. Rosenbloom, M.D., appeals that portion of an order of the orphans' court gifting the home of his incapacitated wife, Carol Shiner Rosenbloom, Esq., to their daughter, Kate Rosenbloom.  The orphans' court has full authority under the Probate, Estates, and Fiduciaries Code ("PEFC")[1] to dispose of estate assets in the manner that the orphan's court believes the incapacitated person[2] would wish.  We therefore affirm its decision to give the home to Kate on Ms. Rosenbloom's behalf.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 20 Pa.C.S.A. §§ 101-8815.

[2] "'Incapacitated person'" means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to

This guardianship matter began August 22, 2016, when Dr. Rosenbloom petitioned the Orphans' Court of Allegheny County to have Ms. Rosenbloom adjudged an incapacitated person. The court granted his request two months later. It simultaneously appointed Aligned Partners Trust Company ("the Guardian") the plenary guardian of Ms. Rosenbloom's estate.[3]

The Guardian subsequently petitioned to invalidate certain gifts that Ms. Rosenbloom had given to Kate in July of 2016. Ms. Rosenbloom gave Kate title to a home (at 153 Hartwood Drive in Pittsburgh, Pennsylvania) and certain investment accounts worth approximately $283,000. Kate had resided in the home for several years and had made substantial improvements to it. All told, the home and the accounts had a combined, potential worth of $1,000,000.

The orphans' court found that Kate exerted undue influence over Ms. Rosenbloom and negated the transfer of the $283,000 accounts to Kate. However, it refused the Guardian's request to negate the gift of the Hartwood Drive home to Kate, because it found that Ms. Rosenbloom wanted to give the home to Kate, despite any undue influence. The orphans' court entered an order to that effect, and Dr. Rosenbloom, who intervened below, has timely appealed.

---

manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S.A. § 5501.

[3] Several other individuals and agencies have served as limited guardians of Ms. Rosenbloom's person. Their identities are irrelevant to the disposition of this appeal.

He raises two claims of error. They are:

1. Whether the [orphans'] court erred in upholding the transfer of the Hartwood Residence despite finding . . . that Ms. Rosenbloom was incapacitated at the time she transferred the Hartwood Residence to Kate Rosenbloom.

2. Whether the [orphans'] court erred in upholding the transfer of the Hartwood Residence despite finding . . . that Ms. Rosenbloom was subjected to undue influence by Kate Rosenbloom, especially with respect to the disposition of Ms. Rosenbloom's estate, at the time of the transfer of the Hartwood Residence.

Rosenbloom's Brief at 3. Because these two issues are essentially the same claim, argued on two different grounds, we address them simultaneously.

Dr. Rosenbloom asserts (and the Guardian agrees)[4] that the orphans' court erred when it opined as follows:

Although the [orphans' court] believes that voiding both the deed transfer and the securities transfer would be permissible under the law and circumstances, the [orphans' court] finds that [Ms. Rosenbloom's] desire to transfer the residence to [Kate] was a long-standing intention and not a sudden decision. On the other hand, the transfer of $283,000 in securities and the forgiveness of the loans was a new decision on the part of [Ms. Rosenbloom] in June-July 2016, at which time she was cognitively impaired and incapable of making an informed decision to transfer significant funds to her daughter. As such, the Court directed Ms. Rosenbloom to return the sum of $283,188 to [the] estate, but did not void the deed [to the home].

Orphans' Court Opinion, 5/20/19, at 6.

---

[4] **See** Guardian's Application to Allow Participant to Join in Appeal, 8/7/19. **See also** August 21, 2019 Order of Superior Court (granting Guardian's request to join Dr. Rosenbloom's appeal).

According to Dr. Rosenbloom, the decision of the orphans' court to uphold the deed transfer to Kate was incorrect, because the court had decreed Ms. Rosenbloom incapacitated. In his view, there was no competent evidence of record to support the factual finding of the orphans' court that Ms. Rosenbloom had a long-standing desire to give the Hartwood Drive property to Kate. *See* Rosenbloom's Brief at 15. He also contends that, once the orphans' court concluded Ms. Rosenbloom was incapacitated and Kate exerted undue influence over her, "the burden shifts to the person accused of undue influence to prove by clear and convincing evidence rebutting the presumption." *Id.* at 16. Thus, Dr. Rosenbloom's advances a two-pronged attack against the order. The first is factual; the second is legal.

When we review a decision of the orphans' court:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that Orphans' Court has derived from those facts.

*In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa.Super. 2004) (citation omitted).

- 4 -

This Court must review the orphans' court's findings of fact with the same degree of deference as we would review a jury's findings. Regarding such findings, we have explained that "as finder of fact, [the judge] is free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations." **Williams v. Taylor**, 188 A.3d 447, 450 (Pa.Super. 2018) (citing **Voracek v. Crown Castle USA Inc.**, 907 A.2d 1105, 1108 (Pa.Super. 2006)). A judge of the orphans' court, who heard and saw the witnesses testify and who had the sole power to determine their credibility, is in a far better position than this Court to decide the truth.

Dr. Rosenbloom asserts that there was no evidence of record to support that orphans' court's finding that Ms. Rosenbloom had wanted to give her Hartwood Drive home to Kate. However, when asked why she decided to transfer the home to Kate, Ms. Rosenbloom testified that the home had originally belonged to her parents and that she desired "[t]hat my daughter would be living in my parents' house. And I was thrilled that [Kate] wanted to." N.T., 10/4/18, at 121-22.

Dr. Rosenbloom asserts that this testimony of Ms. Rosenbloom "is of no probative value," because the orphans' court had declared her incapacitated prior to that hearing. Rosenbloom's Brief at 23. However, he cites to no authority for that proposition. **See id.** Nor does our research reveal any.

On the contrary, the general rule is that all persons are competent to testify, and the probity of their testimony is for the finder of fact to resolve. "Because the Orphans' Court sits as the fact-finder, it determines the

credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." ***In re Estate of Cherwinski***, 856 A.2d at 168.[5]

The pertinent Rule of Evidence provides:

> **(a)** **General Rule.**  Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> **(b)** **Disqualification for Specific Defects.**  A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
>
> > (1)  is, or was, at any relevant time, incapable of perceiving accurately;
> >
> > (2)  is unable to express himself or herself so as to be understood either directly or through an interpreter;
> >
> > (3)  has an impaired memory; or
> >
> > (4)  does not sufficiently understand the duty to tell the truth.

Pennsylvania Rule of Evidence 601.

Dr. Rosenbloom does not contend that Ms. Rosenbloom was disqualified from testifying under Pa.R.E. 601(b), nor did he object to her competency in the orphans' court when she appeared to testify.  ***See*** N.T., 10/4/18, at 103.  Thus, he may not now claim her testimony was of no probative value, when

---

[5] Despite citing ***In re Estate of Cherwinski***, 856 A.2d 165 (Pa.Super. 2004), in his Statement of Scope and Standard of Review, Dr. Rosenbloom overlooks the case's holding that an abuse of discretion is required to overturn the factual findings of an orphans' court.  Nor does he claim such an abuse of discretion occurred when the orphans' court credited Ms. Rosenbloom's testimony that she wanted Kate to have the home.

he failed to object under the Rules of Evidence below. ***See, e.g.,*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

This Court is not a finder of fact. Any impact that Ms. Rosenbloom's incapacitation may have had on her credibility went to the weight to be afforded her testimony, not her competency under Pa.R.E. 601. That was a matter of fact for the orphans' court to resolve, in its sole discretion. It did so and found Ms. Rosenbloom credible in this regard. Thus, "[w]e find that the orphans' court's determinations are supported by competent and adequate evidence, and we will not disturb on appeal its credibility determination on this basis." ***In re Estate of Cherwinski***, 856 A.2d at 168.

We now turn to Dr. Rosenbloom's legal challenge to the decision. He believes that, because the orphans' court deemed Kate to have exerted undue influence over Ms. Rosenbloom, to retain the home, Kate must disprove any undue influence by clear and convincing evidence. Dr. Rosenbloom relies upon ***Thomas v. Seaman***, 304 A.2d 134 (Pa. 1973), for the premise that Kate "did not meet her heavy burden" to disprove the elements of undue influence. Rosenbloom's Brief at 26-27.

Any reliance upon ***Thomas*** is misplaced. There, two elderly sisters lived alone. One sister died, and the other, Beulah Seaman, retained a piece of farmland. Their brother, Dewey, began visiting Beulah daily. He eventually convinced her to visit an attorney with him, so he could "buy" the farm from her. In the attorney's office, Dewey told Beulah not to worry about signing

the deed over to him, because her niece Joan Thomas knew of the deal and "was 'delighted' by it." ***Thomas***, 304 A.2d at 136. Beulah insisted on keeping a life estate in the property. The attorney revised the deed, and Beulah signed it, despite there being no purchase price.

Beulah then moved onto the farm with Dewey and his wife, with the understanding that her brother and sister-in-law would care for her. A few months later, they forced her to leave. Next, Beulah hired a lawyer of her own and sued in equity to have the deed voided on the grounds of fraud and undue influence. The chancellor granted her relief, Dewey appealed, and the Supreme Court of Pennsylvania affirmed.

Critically, ***Thomas*** was ***not*** an orphans' court proceeding; it was an equity matter. Thus, the PEFC was not in issue, and the Supreme Court of Pennsylvania did not consider or apply any of its terms. As such, ***Thomas*** says nothing about the powers of the orphans' court to distribute property under its control in an incapacity proceeding. Moreover, unlike the instant case, where Ms. Rosenbloom wanted and continued to want to give the property to Kate, Beulah never wanted Dewey to own her farm. Thus, the facts of ***Thomas*** are totally unrelated to those at bar. However, in both cases, we note that the court of equity and the orphans' court each took steps to effectuate the desires of the unduly influenced party.[6] Thus, if anything,

_____

[6] We also note that, ***Thomas v. Seaman***, 304 A.2d 134 (Pa. 1973) does not hold, as Dr. Rosenbloom suggests, that Dewey lost, because the burden of

***Thomas***' result supports the actions of the orphans' court in carrying out Ms. Rosenbloom's desires.

Having distinguished ***Thomas*** on both its facts and law, we now review the statute applicable in the orphans' court – the PEFC. When interpreting any statute, we are mindful that:

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," 1 Pa.C.S.A. § 1921(a). The Act counsels that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). When the words of a statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations. 1 Pa.C.S.A. § 1921(c).

---

proof shifted to him. ***See*** Rosenbloom's Brief at 26-27 (citing ***Thomas***, 304 A.2d at 138). The Supreme Court said, "the burden of proving undue influence rests upon the party asserting it, unless that party can prove a confidential relationship between the grantor and grantee, in which case the burden of proof must shift to the party asserting the validity of the deed to prove it was obtained by the free, voluntary and intelligent act of the grantor." ***Id.*** at 138.

The High Court did not resolve the question of whether a confidential relationship existed. However, it ultimately concluded that Beulah "adduced sufficient evidence, as a matter of law, to support a finding of undue influence." ***Id.*** In short, the burden of proof never shifted to Dewey. As such, Dr. Rosenbloom's attempt to shift a "heavy burden" onto Kate by analogizing her to Dewey fails. Rosenbloom's Brief at 27. We therefore are unpersuaded that any burden shifted to Kate to disprove undue influence, in order to retain the home.

*In re Admin. Order No. 1-MD-2003*, 936 A.2d 1, 6 (Pa. 2007) (case citations and some punctuation omitted).

Here, the Guardian petitioned the orphans' court to invalidate the deed that transferred the Hartwood Drive home from Ms. Rosenbloom to Kate, pursuant to Section 5536 of the PEFC. That statute provides, in relevant part, that the orphans' court:

> upon petition and with notice to all parties in interest and for good cause shown, **shall have the power to substitute its judgment** for that of the incapacitated person with respect to the estate and affairs of the incapacitated person for the benefit of the incapacitated person, his family, members of his household, his friends and charities in which he was interested. This power shall include, but is not limited to, the power to:
>
> (1) Make gifts, outright . . . .

20 Pa.C.S.A. § 5536(b) (emphasis added).

The wording of Section 5536(b)(1) is clear and unambiguous. The General Assembly authorized the orphans' court to make gifts of any asset in an estate by substituting its judgment for that of an incapacitated person. Such gifts must be "for the benefit of the incapacitated person, his family, members of his household, his friends and charities in which he was interested." *Id.*

Here, the orphans' court exercised its statutory power to give the Hartwood Drive property to Kate, for her benefit, from Ms. Rosenbloom. The orphans' court gifted the home outright to Kate on behalf of Ms. Rosenbloom, because it found that making that gift would effectuate Ms. Rosenbloom's

desire for Kate to live in the home that once belonged to Ms. Rosenbloom's parents. Kate was a family member (*i.e.*, the daughter) of Ms. Rosenbloom (*i.e.*, the incapacitated person).

Based on the testimony of Ms. Rosenbloom, the orphans' court found that she truly wanted to give that home to Kate. Under Section 5536(b)(1), the orphans' court could do so pursuant to its power to substitute its judgment, even though it previously found that Kate unduly influenced Ms. Rosenbloom.

We know of no case – and Dr. Rosenbloom cites none – holding that a finding of undue influence deprives the orphans' court of its statutory power to distribute the property from the estate thereafter, as the court sees fit. We decline to so hold now.

In sum, Dr. Rosenbloom instituted this proceeding to have his wife deemed an incapacitated person. The orphans' court granted his petition, but that does not mean Dr. Rosenbloom may now dictate Ms. Rosenbloom's affairs for her. Effectively, pursuant to Section 5536 of the PEFC, he asked the orphans' court to substitute its judgment for hers in that regard. The court did so, and we find no error of law or abuse of discretion in it fulfilling Ms. Rosenbloom's wish that Kate own the Hartwood Drive home.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/14/2020