364 A.2d 449
**Robert W. BALIN and Morton B. Weinstein
and Beula T. Weinstein, Appellants,**

**v.**

**PLEASURE TIME, INC. et al.**

Superior Court of Pennsylvania.
Sept. 27, 1976.

Weinstein & Factor, Walter L. Ferst, Philadelphia, for appellants.

Silverman & Warden, Randolph A. Warden, Willow Grove, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

On May 7, 1973, appellants commenced this action in equity seeking *inter alia,* the dissolution of Pleasure Time, Inc.[1] and relief in the nature of requiring certain officers and directors of Pleasure Time, Inc., to personally account for corporate funds expended, without authority, in furtherance of unauthorized business.[2] Responsive pleadings having been filed of record, the parties worked out, as a result of a conference with the chancellor in equity, a stipulation, filed of record, for reference of the matter to a master. The docket entries show that the master was appointed "to take such testimony and other evidence as he shall deem appropriate to assist the Court in reaching a decision in this matter and to make

1. This was a petition for involuntary dissolution, Business Corporation Law, Act of May 5, 1933, P.L. 364, Art. XI § 1107, 15 P.S. § 2107 (1967), invoking "all the ordinary powers of a court of equity to issue injunctions, to appoint a receiver or receivers, pendente lite, with such powers and duties as the court from time to time may direct, and to take such other proceedings as may be requisite to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had." Business Corporation Law, Act of May 5, 1933, P.L. 364, Art. XI § 1108A, 15 P.S. § 2108A (1967).

2. The corporate purpose as originally charted was "to purchase a license or franchise or licenses or franchises and to operate and conduct thereunder a chapter or chapters of Club Internationale, a voluntary association of persons organized to provide its members with vacations throughout the world, and for related purposes and to do all things necessary to obtain, acquire, retain and organize persons interested in joining Club Internationale." Pleasure Time Inc. acquired Club Internationale franchises in the latter part of 1965 and operated under said franchises until October 31, 1972, when the franchises were terminated. Appellants' contention is that all corporate activity after October 31, 1972, was *ultra vires* because the corporate purpose was specifically limited to operating Club Internationale franchises.

his report to the Court with his recommendation for disposition of the case." [3]

Pursuant to the stipulation, the master commenced the performance of his duties and heard testimony on December 3, 1973 and January 21, 1974. The notes of testimony of the December 3, 1973 hearing were lost, and the testimony of the plaintiff was again taken at a third hearing on May 9, 1974.

The master filed his written report on December 30, 1974. The report consisted of *Findings of fact, discussion,*[4] and *Recommendations.*[5] No formal exceptions to the master's report were filed by the parties, and they agreed to submit the case to the chancellor on briefs without argument.

On August 6, 1975, the chancellor entered a decree nisi which, in pertinent part, provided: "[S]aid Master's report is hereby confirmed and the Complaint in Equity is dismissed pursuant to the findings of fact, discussion and recommendations of the Master which the Court *hereby adopts as the adjudication in this matter.*" (Emphasis added.) The chancellor made no separate adjudication. *See* Pa.R.C.P. No. 1517.

---

3. The stipulation itself is not a part of the record before us. The appellant's brief cites the following as the stipulation:

"(a) examine documentary evidence, briefs, and an accounting by defendants, (b) take testimony, (c) recommend how the corporate assets are to be charged against, credited to and divided among any individual parties, and (d) receive and hold in escrow all corporate monies pending further order of the Court. (Master's Report, R. 232a.)" Brief for Appellant at 9.

4. The *Discussion* contained the master's conclusions of law.

5. The *Recommendations* were, *inter alia*: Injunctive relief and the appointment of a receiver was denied. "Dissolution of the corporation shall be accomplished in accordance with law." The prayer for reimbursement from the named officers and directors, *see* text *supra*, was denied. Existing corporate monies were to be "divided equally among and paid to all shareholders of Pleasure Time, Inc., pro rata according to the number of shares held." *See* Printed Record at 247a–248a.

Appellants, pursuant to Pa.R.C.P. No. 1518, filed exceptions, of which the following is the only relevant exception in terms of our disposition of this appeal:

## "I.  EXCEPTIONS TO THE COURT'S ADJUDICATION

1.  Plaintiffs except to the Court's adjudication as not complying with Pa.R.C.P. No. 1517 in that it failed to contain:

(a)  A summary of the issues raised in the pleadings; and

(b)  Conclusions of law."

Printed Record at 251a.

The court en banc heard oral argument on the exceptions, and on November 26, 1975 entered a final decree dismissing the exceptions and denying the appellants relief.  The instant appeal followed.

On appeal, appellants argue, *inter alia*, that the chancellor failed to comply with Pa.R.C.P. No. 1517 (the court shall make an adjudication), and submit that "[t]he failure of the Chancellor to comply with Pa.R.C. P. No. 1517 not only fails to show how the chancellor reached his decision, but also inhibits the appellants in their appeal for want of a complete record."  Brief for Appellants at 22 (citation omitted).  After a review of the entire record, and specifically the master's report,[6] we conclude that the appellants have been deprived of an adequate record for appeal.

In *Community Sports Inc., v. Oakland Oaks,* 429 Pa. 412, 414, 240 A.2d 491, 492 (1968) our Supreme Court succinctly summarized the requirements with which the

---

6.  Suffice it to observe that we perceive issues raised by the pleadings which we do not believe have been given adequate consideration in the master's report.

lower court and the parties must comply before "a procedurally proper appeal" may be taken in an equity action:

"Pennsylvania Rules of Civil Procedure 1516 to 1519, 12 P.S. Appendix clearly enunciate the steps which must be followed by the chancellor, and by the litigants, before a procedurally proper appeal may be taken to this Court. Rule 1516 recites that the parties may file requests for findings of fact and conclusions of law. Rule 1517 itemizes the contents of the chancellor's 'adjudication.' This adjudication must contain, in addition to a decree nisi, *a summary of the issues raised in the pleadings,* specified findings of fact and *conclusions of law,* and a discussion of the factual and legal questions involved in the case. Rule 1518 allows the parties 20 days to file specific exceptions to this adjudication. Finally, Rule 1519 provides that the court en banc shall pass on these exceptions, or, if none are filed, the prothonotary, upon praecipe, shall enter the decree as final. *All of these steps are necessary to establish an adequate record on appeal."* (Emphasis added.) [7]

Moreover, the want of a proper chancellor's adjudication in this case is particularly troublesome in light of the following observation which we feel compelled to articulate. Although the appellants have not raised this issue specifically, and therefore the following is *not* the basis for our disposition of this appeal, there was no authority for the appointment of a master to take testimony in this case.

Rule 1514 of the Rules of Civil Procedure provides: "Except as otherwise provided by Act of Assembly or

7. We are mindful that the procedural posture of the appeal in *Community Sports Inc. v. Oakland Oaks,* 429 Pa. 412, 240 A.2d 491 (1968) is dissimilar to the procedural posture in the instant case. Nonetheless, the Pennsylvania Rules of Civil Procedure are explicit in setting out the requirements of *the chancellor's adjudication* and the appellants, having properly and continuously urged this objection, are entitled to an adequate record for appeal.

rule of the Supreme Court, no examiner, master or auditor shall be appointed." [8]  In *Jackson v. Hendrick,* 457 Pa. 405, 409–410, 321 A.2d 603, 605–606 (1974), our Supreme Court reviewed the limitations imposed upon the power of a court of equity to appoint a master, and articulated the following as the scope of inquiry:

"What we must determine is whether the functions assigned to the master by the trial court are exclusively judicial.  If they are, the master's performance of those functions is barred by rule 1514.  If the duties assigned to the master are nonjudicial, our rules do not deny a court of equity the right to avail itself of the assistance of a master."  (Footnotes omitted.) [9]

8.  Rule 1515 of the Rules of Civil Procedure permits the court, in appropriate cases, to avail itself of the assistance of experts.

"In actions involving complicated accounts, or questions requiring the evidence of experts, the court may employ an accountant or other expert to aid in the proper disposition of the action. The report or evidence of such accountant or other expert shall be available to any party and he shall be subject to examination or cross-examination by any party.  He shall be paid reasonable compensation for his services."

9.  In *Jackson v. Hendrick,* 457 Pa. 405, 321 A.2d 603 (1974) the Court concluded that the appointment of a master was not barred by Pa.R.C.P. No. 1514.  In *Jackson v. Hendrick,* supra, however, a special three-judge court heard the testimony and made findings of fact, conclusions of law, and entered a decree nisi.  The court noted:

"In the instant case, six days of testimony produced a complicated and prolix record.  Upon exhaustively analyzing the evidence, the court made seventy-four detailed findings of fact and numerous conclusions of law.  Because of the complexity of the case before it, the court properly concluded that fashioning appropriate relief would require a detailed study of the available alternatives.

"'Apart from the extraordinary nature of the problems presented by the record, it would be "manifestly impossible" for the Court to anticipate and to appraise all of the factors requiring consideration in administering the prisons, and to draft rules accordingly.  This is not the function of the Court but of the prison officials, and through the master, who will serve as an organizer and a conduit, the fruits of their labor will be brought to the Court for its approbation.' *Jackson v. Hendrick,* No. 71–2437, Feb. Term, 1971, at 253 (Pa.C.P.Phila., filed April 7, 1972).  The court therefore retained jurisdiction, appointed

The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder. We can find no authority to support the appointment of a master, in a case of this nature, to take testimony and make findings of fact.[10]

the master, and ordered the parties, with the master's help, to devise and submit to the court a plan to remedy conditions in the Philadelphia prisons." *Jackson v. Hendrick,* supra at 410–411, 321 A.2d at 606.

10. To highlight the critical fact-finding function in the instant case we have observed from the record the following issue: There were two director's meetings the substance of which are important in the disposition of the issues in this case. The minutes of those meetings, transcribed by one of the appellants, were never approved by the board of directors. The appellees submit that the minutes of those meetings as transcribed by the appellant Weinstein are self-serving. The discussion that took place at these meetings is an issue of credibility.

On this issue of fact-finding, we find it necessary to review *Arcadia Theatre Co. v. Sablosky,* 418 Pa. 34, 209 A.2d 375 (1964) which at first blush, appears to support the procedural posture of this case. The case involved litigation for the control of a corporation. Pursuant to a stipulation approved by the court a master was appointed. In the statement of the procedural context of the case, our Supreme Court wrote: "The court [chancellor in equity] approved the Master's report and *adopted* the findings of fact and conclusions of law . . . ." *Id.* at 38, 209 A.2d at 377 (emphasis added). However, this language, that the court adopted the findings of fact and conclusions of law, is, upon close scrutiny of the case, misleading. In summarizing the extent of the master's participation the court stated: "His [master] function by that agreement was to perform certain duties under the jurisdiction of the chancellor, *and not as a substitute for the chancellor.* . . . The record indicates the chancellor had before him all of the evidence and documents involved in this litigation that were material to the determination of the controversy. *There was, practically speaking, no testimony from which disputed facts were to be decided, the questions being legal ones.* The record also indicates that while the master filed his report, the chancellor made his own determination, which agreed with the report of [the master]. *Id.* at 47–48, 209 A.2d at 381 (emphasis added).

Further, in *Jackson v. Hendrick,* 457 Pa. 405, 321 A.2d 603 (1974) the Court distinguished *Arcadia Theatre Co. v. Sablosky,* supra as follows:

"In Arcadia, this Court approved appointment of a master to supervise a meeting of shareholders and a corporate election. We concluded that because the chancellor made all factual and legal determinations and left to the master only the conduct of the shareholders' meeting, the appointment was within the chancellor's discretion." *Jackson v. Hendrick,* supra at 408–409, 321 A.2d at 605.

Moreover, it is well-setted that the Authority of a master cannot be supplied by consent or otherwise. *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 209 A.2d 375 (1964).[11] However, as noted, the unauthorized appointment of the master is not the rationale for our disposition of this case; the parties have not objected.[12] The dispositive issue is that the trial judge, sitting in equity as a chancellor, failed to file a proper adjudication and thus denied the appellants an adequate record for appeal.

The decree below is vacated, and the record remanded with instructions that the chancellor prepare an adjudication in conformity with Pa.R.C.P. No. 1516–17. The parties then, if they so choose, may proceed in conformity with Rules 1518–19.

PRICE, J., did not participate in the consideration or decision of this case.

11. "If the agreement for the master and his functions and duties violated Rule 1514, the stipulation would have been of no effect." *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 48, 209 A.2d 375, 381 (1964).

12. Even though the parties stipulated to the appointment of a master, a subsequent objection could still be lodged. *See Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 209 A.2d 375 (1964); *see also* note 11 supra.