427 A.2d 667

Sherri Lynn FIUMARA and William James Fiumara by their Parent and Natural Guardian Carol Fiumara

v.

Louis H. FIUMARA and Carolyn C. Kelly, Appellants at No. 96.

Appeal of IRON WORKERS PENSION PLAN OF WESTERN PENNSYLVANIA, at No. 73.

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed March 13, 1981.

Louis J. Krzemien, Pittsburgh, for Iron Workers, appellant (at No. 73) and for appellee (at No. 96).

John W. Jordan, IV, Pittsburgh, for Fiumara, appellees.

Lawrence D. Funsten, Pittsburgh, for Louis Fiumara and Kelly, appellants (at No. 96) and for appellees (at No. 73).

Before PRICE, HESTER and CAVANAUGH, JJ.

PRICE, Judge:

This appeal arises out of an action in equity brought to determine the interests in a claim dispute. Appellants,

Carolyn Kelly and Louis Fiumara, contest the decree ordering them to disgorge funds they received from appellant Iron Workers Pension Plan of Western Pennsylvania (hereinafter Pension Plan). Pension Plan appeals from the decree holding it liable to appellees for funds paid subsequent to receipt of notification of appellees adverse claim. On February 5, 1979, appellees filed a motion to dismiss Pension Plan's appeal, which motion was denied on November 14, 1979. Pension Plan claims that the court erred in its determination as to their liability. Kelly and Fiumara contend that the adjudication is insufficient in law and fact. Finding both claims to be without merit, we affirm the final decree.

The pertinent facts are as follows.[1] Appellees are the only children of John J. Fiumara, deceased. Decedent was a member of Pension Plan and, as such, was entitled to participate in that plan's welfare and pension benefits. On January 5, 1970, decedent changed the beneficiary designation from his estranged wife to his two minor children, the appellees. The daughter was 12 years of age, the son 10 years of age, at the time of his death.

In April or May of 1972, John Fiumara's ex-wife and eight brothers and sisters were told that he had terminal cancer. Thereafter, Pension Plan received a change of beneficiary form dated May 4, 1972, purporting to change the beneficiary to decedent's brother, appellant Louis H. Fiumara. Appellant Fiumara subsequently admitted signing decedent's name to the form while decedent was in surgery and, accordingly, the trial court found the form to be a forgery.

The decedent was hospitalized from December 26, 1972 through January 13, 1973. Following this date, decedent was unable to care for himself and thus moved in with Carolyn Kelly, a sister, with whom he had previously been estranged. Later that month an attorney visited the Kelly

1. Appellants have failed to include the transcript in the record. Absent a proper record, we must "accept the statement of facts made by the court below." *Sauber v. Nouskajian*, 286 Pa. 449, 453, 133 A. 642, 643 (1926). *Slocock v. Liggit*, 326 Pa. 492, 192 A. 671 (1937).

residence to consult with decedent about his estate. Although the Pension Plan's benefits were never discussed, a will was drafted at that time making Mrs. Kelly the sole heir and executrix of decedent's estate. During the ensuing months decedent's physical condition deteriorated. He received medication for pain, was given radiation and chemotherapy, suffered severe weight loss and became confined to the area where he slept. By the time of his death he was entirely dependent on Mrs. Kelly for all the necessities of life.

On March 7, 1973 decedent's condition appeared to be critical. He was hospitalized and arrangements were made for him to receive the last rites of the Roman Catholic Church. However, by March 11, 1973 decedent recovered sufficiently to be discharged to his sister's care. A change of beneficiary form, dated March 14, 1973, was signed by decedent and completed by Mrs. Kelly, who designated herself sole beneficiary of decedent's welfare and pension benefits. Upon receipt of this form a Pension Plan employee contacted a man identifying himself as John Fiumara. The employee was told that there were to be two beneficiaries, but these names were not disclosed. On March 16, 1973, yet another change of beneficiary form was signed by the decedent. It too was completed by Mrs. Kelly, but this time she designated Louis Fiumara beneficiary of the welfare benefits and retained herself as beneficiary of the pension benefits. Decedent died on March 26, 1973.[2]

Upon notification of John J. Fiumara's death Pension Plan paid the lump sum welfare benefits to appellant, Louis Fiumara, and commenced monthly pension benefit payments to Kelly. The plan continued the payments to Mrs. Kelly,

2. Throughout his illness decedent exhibited affection and concern for his children. He was frequently visited by them and remembered his daughter's birthday only nine days before his death. He had also remained close to his other six siblings and and to his mother. The chancellor found no facts to explain why decedent would favor appellants Kelly and Fiumara to the exclusion of the other natural objects of his bounty. Quite to the contrary, the chancellor completely rejected as patently unbelievable, the appellant's evidence offered on the subject.

346

even after it had been notified of the claim dispute. The trial court imposed a constructive trust upon Mrs. Kelly and Mr. Fiumara for the proceeds distributed by Pension Plan *prior to* notification of appellees' interests. Pension Plan was held liable for payments made *subsequent to* its receipt of notification. It is from the final decree by the court en banc affirming the decree nisi that appellants now appeal.

■ "The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder." *Balin v. Pleasure Time, Inc.,* 243 Pa.Super. 61, 68, 364 A.2d 449, 453 (1976). "The court en banc having affirmed the chancellor's findings of fact, they must receive the weight of a jury verdict. Our scope of review is therefore to determine if such findings are supported by sufficient evidence and whether the court below committed an error of law." *Reifschneider v. Reifschneider,* 413 Pa. 342, 344, 196 A.2d 324, 325 (1964), *citing Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 183 A.2d 544 (1962); *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962). Since appellants have not furnished us with a transcript, we accept the court's findings of fact as conclusive. *Sauber v. Nouskajian,* 286 Pa. 449, 133 A. 642. Therefore, "[o]nly if it is plain that ... the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the chancellor." *Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 72, 384 A.2d 1228, 1232 (1978), *quoting Roberts v. School District of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975).

■ Appellants Kelly and Fiumara claim that the adjudication fails to fulfill the mandates of Pennsylvania Rule of Civil Procedure 1517(a).[3] We cannot agree. "Rule 1517

3. Rule 1517(a) provides as follows:
   Rule 1517. The Adjudication. Notice
   (a) The court shall make an adjudication and may do so before the testimony has been transcribed. The adjudication shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi.

itemizes the contents of the chancellor's 'adjudication'. This adjudication must contain, in addition to a decree nisi, a summary of the issues raised in the pleadings, specified findings of fact and conclusions of law, and a discussion of the factual and legal questions involved in the case." *In Re Involuntary Termination of Parental Rights v. Dingus,* 487 Pa. 387, 391–392, 409 A.2d 404, 407 (1979) *citing Community Sports, Inc. v. Oakland Oaks,* 429 Pa. 412, 240 A.2d 491 (1968). The rule no longer requires numerated findings of law and fact, but rather "allows an adjudication and discussion in narrative form." *Omracanin v. Hassler,* 8 Pa. Cmwlth. 224, 226 n.2, 302 A.2d 878, 882 n.2 (1973). The policy behind the rule is to assure that the adjudication provides an adequate basis for appellate review.

■ Instantly, the court articulated detailed findings and considerations in an adjudication that was ten pages long. Indeed, it is difficult to imagine an adjudication being more specific in its analysis of the interaction between the parties during the period in question. The chancellor accurately identified the principal legal question as whether the disputed beneficiary forms were "the act and deed of John F. Fiumara." It is clear that the court recognized the issues involved and granted them full consideration.[4]

Pa.R.Civ.P. 1517(a).

4.  The cases cited in support of appellants' claim are inapposite to the factual situation now before us. In *Stryjewski v. Local Union No. 830,* 451 Pa. 550, 304 A.2d 463 (1973), the decree was vacated when no supportive facts were given to maintain the court's finding that " 'all damage suffered by Plaintiffs from the Union's activity was substantially caused by the Union's violent and mass activities and picketing.' " *Id.,* 451 Pa. at 555, 304 A.2d at 466. In *Community Sports, Inc. v. Oakland Oaks,* 429 Pa. 412, 240 A.2d 491 (1968), an adjudication was held insufficient when a chancellor had made no findings of fact or conclusions of law. In *Balin v. Pleasure Time, Inc.,* 243 Pa.Super. 61, 364 A.2d 449 (1976), we found an adjudication to be inadequate when the chancellor merely adopted the findings of a master's report that failed to sufficiently address issues raised by the pleadings. *See also Rankin v. School District of Pittsburgh,* 33 Pa.Cmwlth. 129, 381 A.2d 195 (1977) (decree requiring mandatory injunctive relief vacated since there were no findings made as to the feasibility of constructing a new school or as to potential racial

■■■ Appellants Kelly and Fiumara next contend that the adjudication is legally insufficient to support a finding of fraud. The applicable standard of appellate review in cases involving issues of fraud, confidential relationship or undue duress is "whether the findings of fact of the chancellor, approved by the court en banc, are based upon legally competent and sufficient evidence, and whether the trial court committed an error or abused its discretion." *In Re Estate of Clark*, 467 Pa. 628, 634, 359 A.2d 777, 781 (1976). *Treitinger Will*, 440 Pa. 616, 269 A.2d 497 (1970). However, it is unnecessary for us to reach the question whether the record supports a finding of fraud since we find the evidence sufficient to establish a confidential relationship and, therefore, shift the burden of proof to the purported beneficiaries. *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972).[5] The facts, as found by the chancellor, clearly sustain a holding that appellants failed to meet that burden.

■■■ "When the donee establishes a prima facie case of a gift a rebuttable presumption arises that the gift is valid and the burden is then on the contestant to rebut the presumption by clear, precise and convincing evidence." *In Re Estate of Clark*, 467 Pa. at 634, 359 A.2d at 781. *Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268 (1979). However, our supreme court has stated that:

> When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage. *McCown v. Fraser*, 327 Pa. 561, 192 A. 674 (1937);

composition). In all of these cases the adjudication was patently devoid of essential findings.

5. In *Frowen v. Blank*, 242 Pa.Super. 276, 363 A.2d 1267 (1976), we remanded for findings of fact and conclusions of law on the issue of confidential relationship when the chancellor had failed to discuss the issue and made no findings of fact. Although in the instant case the chancellor has not delineated this issue, he has provided detailed findings of facts which evince the existence of such a relationship. *See Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972).

*Null's Estate*, 302 Pa. 64, 153 A. 137 (1930) . . . This well settled doctrine, founded on strong considerations of public policy, renders inapplicable the general rule requiring an affirmative showing of fraud.

*Young v. Kaye*, 443 Pa. 335, 342, 279 A.2d 759, 763 (1971) (citations omitted). Therefore, "once a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship, . . . to prove absence of fraud, and that the transaction was fair and equitable." *Ruggieri v. West Forum Corp.*, 444 Pa. 175, 180, 282 A.2d 304, 307 (1971). *In Re Estate of Clark*, 467 Pa. 628, 359 A.2d 777; *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973); *Shaffer v. Shaffer*, 344 Pa. 158, 23 A.2d 883 (1942).[6]

"It is impossible to define precisely what constitutes a confidential relation." *Young v. Kaye*, 443 Pa. at 342, 279 A.2d at 763, *quoting McCown v. Fraser*, 327 Pa. 561, 192 A. 674 (1937). Our analysis must necessarily be based upon the facts of each case. We will deem such a relationship to exist whenever we find that " 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an over-mastering dominance on one side, or weakness, dependence or justifiable trust, on the other.' " *In Re Estate of Clark*, 467 Pa. at 635, 359 A.2d at 781, *quoting Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468 (1967).

Turning to the facts *sub judice*, our reading of the record convinces us that a confidential relationship existed between appellant Kelly and decedent. Decedent was physically debilitated and under medication for pain at the time of the March 14, 1973, and March 16, 1973 beneficiary designations. He was confined to bed and dependent upon Mrs. Kelly for

**6.** To shift the burden of proof in *testamentary* transactions one "must prove by clear and convincing evidence that there was a confidential relationship, that the person enjoying such relationship received the bulk of the estate, and that the decedent's intellect was weakened." *Estate of Reichel*, 484 Pa. 610, 614, 400 A.2d 1268, 1270 (1979). This standard is not applicable to the instant transaction however, since in Pennsylvania the designation of beneficiaries of pension plans is deemed to be an *inter vivos* transaction. 20 Pa.C. S.A. § 6108.

all the necessities of life. In addition, the beneficiary designations were completed by Mrs. Kelly rather than by decedent. These facts were more than sufficient to establish the existence of a confidential relationship between decedent and Mrs. Kelly. Therefore, the burden was upon Mrs. Kelly to show that the designation was free from any taint of fraud or deception.[7]

To carry that burden it was incumbent upon Mrs. Kelly to demonstrate by clear and convincing evidence that the beneficiary change was the free, voluntary and intelligent act of decedent. *Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268; *In Re Estate of Clark*, 467 Pa. 628, 359 A.2d 777. Here, she produced witnesses who testified that decedent had become disaffected with his children. The chancellor found this testimony untrustworthy in light of evidence establishing decedent's continued affection and concern for his children. After a careful consideration of the chancellor's findings of fact we conclude that appellant fell far short of sustaining the burden of showing that the beneficiary designations were free of fraud. Therefore, the chancellor's finding that said designations are void must be affirmed.

Appellant Fiumara claims that the court erred in finding that the change of beneficiary form dated May 4, 1972 was not the act and deed of decedent. However, since Mr. Fiumara admitted signing the form, and since he did not

7. *See In Re Estate of Clark*, 467 Pa. 628, 359 A.2d 777 (1976) (confidential relationship held to exist between woman and draftsman of her will since she was of weakened mental condition, dependent on the draftsman for her financial dealings, and the draftsman assumed control over her business affairs); *In Re Estate of Button*, 459 Pa. 234, 328 A.2d 480 (1974) (confidential relationship found between invalid and woman at whose house he resided); *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972) (confidential relationship existed between father suffering from senility and daughter with whom he resided); *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971) (confidential relationship existed between octogenarian and tax consultant since former had no knowledge of tax laws and was dependent upon consultant's advice); *McCown v. Fraser*, 327 Pa. 561, 192 A. 674 (1937) (confidential relationship found between woman and man she "adopted" who was sixty-five years her junior).

do so as an authorized agent of decedent, the form is clearly invalid.[8]

■ Appellant Pension Plan claims that the trial court erred in finding it liable for payments it made subsequent to notification of a claim dispute. We find this allegation to be without merit.

> It is ... manifest that where the insurer knows of the existence of adverse claims to the proceeds and chooses to pay one of the claimants, it acts under the risk that the recipient selected by it is the one who is lawfully entitled thereto. Thus an insurer which, with notice of adverse claims, pays the full amount to the named beneficiary, is liable over for the amount wrongfully paid.

5 Couch on Insurance 16–17 (2d ed. 1960). We consider the responsibility of an insurer to be equated with that of a pension plan in regard to the distribution of death benefits. As fiduciaries, both have a duty to exercise a high standard of care in the payment of such funds. Thus, we discern no reason for imposing different standards of liability where the standards of care are identical.

■ Appellants contend that the written notification they received from appellees' attorney apprising them of the claim dispute was inadequate notice to justify a termination of payments to the designated beneficiaries. Although there is no Pennsylvania case directly on point, the general rule holds that such a party is liable for all payments made with knowledge of a claim dispute. *Stravros v. Western and Southern Life Insurance Company, Inc.*, 486 S.W.2d 712 (Ky.Ct.App.1972); *Golden State Mutual Life Insurance*

8. *See* note 1 *supra.* Mr. Fiumara contends that the court failed to find that he possessed the requisite intent to commit a forgery. However, since he admitted that he designated himself the beneficiary and signed decedent's name to the form, the court would have been warranted in inferring that Mr. Fiumara possessed the requisite scienter to defraud. *Commonwealth v. Rothman,* 226 Pa.Super. 319, 310 A.2d 353 (1973). Even were this not the case, however, the criminal elements of forgery are irrelevant in establishing that the designation was not the act of decedent.

*Company v. Adams,* 340 S.W.2d 77 (Tex.Ct.Civ.App.1960); *Redden v. Prudential Life Insurance Company,* 193 Minn. 228, 258 N.W. 300 (1935); *Sink v. Waco Mutual Life and Accident Association,* 49 S.W.2d 888 (Tex.Ct.Civ.App.1932).[9] Pension Plan's contention that appellees had to state specific legal grounds in support of their claim to vitiate its duty to the designated beneficiaries is contrary to the weight of authority and, we believe, is not in accord with the law and public policy of Pennsylvania.[10] Accordingly, we adopt the prevailing view that appellant is liable for all payments made following notification of an adverse claim and affirm the chancellor's decree.

The final decree of the Allegheny County Court of Common Pleas is affirmed.

**9.** *Cf. Weed v. Equitable Life Assur. Society of the United States,* 288 F.2d 463 (5th Cir. 1961); *Avondale v. Sovereign Camp WOW,* 134 Neb. 717, 279 N.W. 355 (1938); *Metropolitan Life Insur. Company v. Louisville Trust Co.,* 89 S.W. 268 (Ky.Ct.App.1905) (all holding that payment by insurer to the beneficiary of record will prevent a second recovery *if* the insurer made such payment *without notice* of an adverse claim).

**10.** In *Phillips v. Continental Assur. Co.,* 210 Pa.Super. 178, 231 A.2d 422 (1967), and in *Smith v. Metropolitan Life Insur. Co.,* 222 Pa. 226, 71 A. 11 (1908), our courts addressed issues relevant to the disposition of the case now before us.

In *Smith* an insured named his daughter as beneficiary following the death of his wife who was the original beneficiary. 222 Pa. 226, 71 A. 11. The insurer accepted notification of the beneficiary change even though the change was ineffective under the policy terms. Upon the insured's death, the proceeds were paid to the wife's executor. Our supreme court found the company liable to the daughter on the basis of estoppel.

In the more recent case of *Phillips,* the insured had designated two persons as irrevocable beneficiaries. 210 Pa.Super. 178, 231 A.2d 422. The company subsequently accepted a document designating a third person as beneficiary. After the first beneficiaries recovered a judgment entitling them to the proceeds, the company claimed that the third beneficiary's claim was meritless since the purported change was invalid. We held that the company's apparent acceptance of the change of beneficiary form estopped it from raising such a claim as a defense.

Although in these cases elements of estoppel were controlling, the public policy considerations against having an insurer knowingly ignore adverse claims were also evident.