439 A.2d 178

**Sallie B. SHUPP, Appellant,**

**v.**

**Mildred J. BROWN and Robert S. Brown.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1980.

Filed Dec. 29, 1981.

Lawrence J. Patterson, Lancaster, for appellant.

William E. Haggerty, Lancaster, for appellees.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

This appeal concerns an action in equity which was originally brought by Sallie B. Shupp against her daughter Mildred J. Brown and her son-in-law Robert S. Brown to void a deed on the basis of alleged fraud. The deed in question conveyed, without consideration, certain real estate known as Shupp's Grove, which consists of approximately 85 acres of farm land in Lancaster County and which is primarily used as an outdoor antique market.

Sallie B. Shupp acquired sole ownership of this property upon the death of her husband Jacob in 1975. The alleged conveyance to Mr. and Mrs. Brown took place on February 23, 1976, when the deed was signed. However, the deed was not recorded until August 18, 1976.

In September of 1976, appellee Robert S. Brown separated from his wife, appellee Mildred J. Brown. Subsequently, Sallie B. Shupp brought this action in equity to rescind the deed. After suit was filed, Mrs. Shupp died; and, in her place, Mildred J. Brown, was substituted in her capacity as Executrix of the Last Will and Testament of Sallie B. Shupp.

The complaint alleges that Sallie B. Shupp signed the deed on February 23, 1976, on the basis of the misrepresentation to the effect that the deed was actually a lease and management contract concerning the operation of the outdoor antique market. The complaint further alleged that the defendants were in a confidential relationship with Mrs. Shupp.

Mildred J. Brown, in her capacity as original defendant, filed an answer admitting that the deed was a result of fraud committed on her mother.

Defendant Robert S. Brown, appellee herein, contends that Sallie B. Shupp voluntarily executed the deed on February 23, 1976, with the express intention of giving the property to her daughter and son-in-law.

After a non-jury trial, the lower court concluded that no confidential relationship existed between Sallie B. Shupp and the defendants or either of them; that the appellant had failed to establish fraud, force, coercion or undue influence; and that the conveyance in question was valid. Mildred J. Brown, in her capacity as Executrix of the Estate of her deceased mother, filed this appeal.

We affirm.

We initially note that, "the trial judge, sitting in equity as a chancellor, is the ultimate fact-finder." *Balin v. Pleasure Time, Inc.,* 243 Pa.Super. 61, 68, 364 A.2d 449, 453 (1976). "The court en banc having affirmed the chancellor's findings of fact, they must receive the weight of a jury verdict. Our scope of review is therefore to determine if such findings are supported by sufficient evidence and whether the court below committed an error of law." *Reifschneider v. Reif-*

*schneider,* 413 Pa. 342, 344, 196 A.2d 324, 325 (1964); *Fiumara v. Fiumara,* 285 Pa.Super. 340, 427 A.2d 667, 670 (1981).

"[O]n appeal the question is not whether the appellate court would have reached the same conclusion, but whether the evidence is sufficient to support the chancellor's conclusion." *Bokoch v. Noon,* 420 Pa. 80, 85, 215 A.2d 899, 901 (1966); *Baker v. Zingelman,* 259 Pa.Super. 441, 393 A.2d 908, 910 (1978).

The crucial question, which is properly before us on appeal, is whether, on February 23, 1976, there existed a confidential relationship between Sallie Shupp and Mr. and Mrs. Brown. In the instant case, it is undisputed that the appellee, Robert S. Brown, established a prima facie case of a gift in that the deed of February 23, 1976, was executed by the donor and delivered to the donees and subsequently recorded.

"When the donee establishes a prima facie case of a gift a rebuttable presumption arises that the gift is valid and the burden is then on the contestant to rebut the presumption by clear, precise and convincing evidence." *In re Estate of Clark,* 467 Pa. 628, 634, 359 A.2d 777, 781 (1976); *Estate of Reichel,* 484 Pa. 610, 400 A.2d 1268 (1979); *Fiumara, supra,* 285 Pa.Super. 340, 427 A.2d at 671.

However, in *Young v. Kaye,* 443 Pa. 335, 342, 279 A.2d 759, 763 (1971), our Supreme Court stated:

"When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous, fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage. [Citations omitted] . . . This well settled doctrine, founded on strong considerations of public policy, renders inapplicable the general rule requiring an affirmative showing of fraud."

Accordingly, "once a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship, . . . to prove absence of fraud

and that the transaction was fair and equitable" *Ruggieri v. West Forum Corporation*, 444 Pa. 175, 180, 282 A.2d 304, 307 (1971); *Clark*, supra; *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134 (1973); *Fiumara*, supra.

Applying these legal principles to the instant case, the appellant would have the burden of proving the existence of fraud, duress, or undue influence committed by Mr. and Mrs. Brown by clear, precise and convincing evidence, unless the appellant initially established that there existed a confidential relationship between Sallie B. Shupp and Mr. and Mrs. Brown. If a confidential relationship is shown to exist, Mr. and Mrs. Brown would have the burden of proving the absence of fraud by clear, precise and convincing evidence.

"It is impossible to define precisely what constitutes a confidential relation." *Young*, supra; *Fiumara*, supra. As recently stated by this Court:

> "We will deem such a relationship to exist whenever we find that 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence, or justifiable trust, on the other.' *In re Estate of Clark*, 467 Pa. at 635, 359 A.2d at 781, quoting *Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468 (1967)." *Fiumara*, supra, 427 A.2d at 672.

In the instant case, the determination of the issue, whether a confidential relationship existed between Mrs. Shupp and Mr. and Mrs. Brown, would ultimately turn on the credibility of the witnesses who testified before the lower court. The appellant presented the testimony of seven witnesses, including two attorneys who had previously represented Mrs. Shupp prior to her death. The appellee presented the testimony of the attorney who prepared the deed, Mrs. Shupp's minister, the son of Mr. and Mrs. Brown and the son's girlfriend. The testimony of these various witnesses is collectively replete with remarkable discrepancies, disagreements and inconsistencies concerning the intent of Sallie B. Shupp and her relationship with Mr. and Mrs.

Brown. After a full review of the record, we must, on appeal, defer to the chancellor's assessment of the credibility of the witnesses and determine "whether the findings of fact of the chancellor, approved by the Court en banc, are based upon legally competent and sufficient evidence." *Clark,* supra; *Fiumara,* supra.

The relevant findings of the chancellor are as follows: "... (2) Plaintiff was born July 31, 1895, and on the date of the conveyance (February 23, 1976) was 80 years, 6 months of age....(7) On February 23, 1976, Sallie B. Shupp suffered from poor eyesight. (8) On February 23, 1976, Sallie B. Shupp was alert, agile, coherent, rational and mentally competent. (9) At the request of defendant, Mildred J. Brown, Anthony Kilkuskie, a lawyer, prepared the two deeds of conveyance in question. (10) On February 23, 1976, Kilkuskie went to the Browns residence where Sallie B. Shupp was then living, explaining the proposed conveyance and effect thereof to Sallie B. Shupp whereupon the said Sallie B. Shupp understanding the effect thereof executed the deeds without reading them. Defendant Robert S. Brown was not present at the time the deeds were executed but defendant Mildred J. Brown was present. (11) Defendant Robert S. Brown did not assist Sallie B. Shupp in signing her name ... (14) Sometime following the execution of the deed in question, defendant Robert S. Brown and defendant Mildred J. Brown separated .... (16) Defendant Mildred S. Brown is the sole beneficiary to the Will of Sallie B. Shupp, dated November 3, 1977. (17) Sallie B. Shupp did not execute the deeds in question believing them to be a lease or management agreement. (18) Sallie B. Shupp did not execute the deeds pursuant to any fraudulent representation made by either defendant. (19) Defendant Robert S. Brown did not exert any duress on his wife, Mildred J. Brown, or on Sallie B. Shupp to compel the execution of the deeds. (20) The deeds were executed by Sallie B. Shupp primarily to facilitate the management of the Shupp Grove Enterprise. (21) Sallie B. Shupp's bringing suit to rescind the conveyance was inspired by the separa-

tion of her daughter and son-in-law and by Sallie's and Mildred's intention to divest Robert S. Brown of his ½ interest in the real estate."

We hold that these findings of fact are based upon legally competent and sufficient evidence.

■■■ The mere fact that Mildred Brown was the daughter of Sallie Shupp and that Robert Brown was the son-in-law of Sallie Shupp does not, without more, place them in a relationship of confidentiality. *In Re Scott*, 455 Pa. 429, 316 A.2d 883, 885–6 (1974); *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410 (1922). The reasoning underlying the *Scott* decision is that, in many cases, an elderly person may make a gift to a child or relative out of natural love and affection and not on the basis of any overmastering influence. In the instant case, it is clear that Sallie Shupp would have naturally desired to give her property to her only child, Mildred Brown. Robert and Mildred took care of Sallie after the death of her husband and also managed the outdoor antique market. Therefore, there is sufficient evidence to support the lower court's finding that Sallie Shupp voluntarily and knowingly gave the property to her daughter and son-in-law.

Concerning Sallie's poor eyesight, it was the appellant's contention that, on February 23, 1976, Sallie B. Shupp was "legally blind". However, no medical testimony was presented concerning this issue. The testimony was undisputed that Mrs. Shupp spent a great deal of time watching her daily television programs. There was also testimony to the effect that, although she could not read fine print, she could see some writing, such as the titles of magazine articles.

In *Scott*, supra, the court considered the physical disability of the donor, including poor eyesight and determined,

"physical limitations imposed on a party to a transaction by disease and advancing age do not by themselves create a confidential relationship with one another; such limitations support an inference of confidentially only insofar as they may bear on the parties' capacity to understand the

nature of the transactions in question." [Citations omitted]. 455 Pa. 429, 316 A.2d at 886.

In the instant case, although Mrs. Shupp was advanced in years, the evidence is sufficient to support the lower court's finding that on February 23, 1976, Mrs. Shupp was alert, agile, coherent, rational and mentally competent. Taking the appellant's position at face value, if in fact Mrs. Shupp thought she was signing a lease or management agreement, rather than a deed, it would seem that Mrs. Shupp had the mental capacity to understand the rights, obligations, and other legal complexities involved with a business transaction of that nature.

Finally, Mr. Kilkuskie, the attorney who prepared the deed, testified that he personally went to the Browns' home on February 23, 1976, and explained to Mrs. Shupp in great detail the effect of giving the property to Mr. and Mrs. Brown and the legal effect of the deed which she was about to execute. If this testimony is to be believed, it would clearly establish that Mrs. Shupp knowingly and voluntarily gave the property to Mr. and Mrs. Brown.

The appellant raises two additional questions concerning the reserved rulings on evidence by the lower court. The lower court heard the testimony of all of the witnesses presented by the appellant; and, as part of its adjudication, the lower court ruled that certain testimony, relating to statements allegedly made by Sallie B. Shupp, was inadmissible as hearsay and, with respect to Mildred J. Brown, in violation of Dead Man's Act, 42 Pa. C.S.A. Section 5930 (formerly 28 P.S. Section 322). We do not reach the merits of appellant's contentions since the lower court, sitting as it was without a jury, heard all of the the evidence presented and this testimony obviously did not affect its ultimate findings and conclusions.

With respect to the exclusion of Mrs. Brown's testimony on the basis of the Dead Man's Act, the lower court specifically stated "the objection is really moot since our findings and conclusions would be the same even if her testimony were admitted and evaluated." With respect to the testimony which was excluded as hearsay, the lower court did

consider other testimony presented by the appellant, without objection, relating to statements made by Mrs. Shupp prior to her death, including the testimony of two attorneys. Therefore, the lower court ultimately decided the instant case on the basis of the credibility of the witnesses who testified for the respective parties, and we find no abuse of discretion or reversible error.

Finally, the appellant contends that the lower court abused its discretion in interpreting the statement of Mrs. Shupp to her daughter, "you still have the land", as being evidence that Mrs. Shupp was aware that she had signed a deed rather than a management agreement.[1] The appellant contends that the lower court took this statement out of context and that the statement should have been interpreted to the effect Mrs. Shupp thought that she still owned the property and that some day Mildred would get it. For the reasons stated above, we find that any error by the lower court is harmless. The testimony is unclear as to what exactly Mrs. Shupp did mean. The statement could be interpreted in either fashion, and we find that the lower court did not abuse its discretion.

Final decree affirmed.

---

1. It is obvious that the lower court did consider the testimony of Mildred J. Brown, even though the lower court ruled that she was incompetent to testify because of the Dead Man's Act.