**Frances SHEDLOCK, Plaintiff,**

v.

**Benedict J. SHEDLOCK, and Joseph B. Shedlock, Defendants.**

**Civ. No. 87–0311.**

United States District Court, M.D. Pennsylvania.

Feb. 4, 1988.

William A. DeGillio, Wilkes–Barre, Pa., for plaintiff.

John G. Whelley, Jr., Richard M. Ferguson, Wilkes–Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff, Frances Shedlock, deeded a property she owned at 530 Donnelly Street, Duryea, Luzerne County, Pennsylvania, to two of her sons, Benedict J. Shedlock and Joseph B. Shedlock, the Defendants. By this action she seeks return of the property on allegations that the conveyance was the result of undue influence exercised against her by the two named Defendants.

After depositions of the main parties and witnesses, the Defendants on December 24, 1987 filed a motion seeking to have summary judgment entered in their favor. The motion has been briefed by all parties and is ripe for decision.

For the reasons stated herein we will grant the motion.

### I

The Plaintiff owned properties located at 528 and 530 Donnelly Street in Duryea, Luzerne County, Pennsylvania. She is the mother of five living children. On January

1, 1985 she went to the office of her long time lawyer and directed him to draw deeds transferring the property at 528 Donnelly Street to her daughter, Lucille Kizner, and her granddaughter, Gail Kizner, as joint tenants with the right of survivorship, and transferring the property at 530 Donnelly Street to her sons, Benedict and Joseph (the Defendants), as tenants in common.

On February 6, 1986, the Plaintiff instituted a civil action (in equity) in the Court of Common Pleas of Luzerne County, seeking the return of the property at 530 Donnelly Street from the two Defendants named herein. On March 2, 1987, the Defendants, both of whom reside outside of the State of Pennsylvania, removed the case to this Court on the basis of diversity of citizenship.

Depositions of the Plaintiff and the Plaintiff's main witnesses as well as the deposition of Benedict Shedlock have been taken and filed with this Court.

The allegations in Paragraphs 5, 6 and 11 of the Plaintiff's complaint set forth the basis of her alleged entitlement to return of the property:

5. That prior to January 8, 1985, the Defendants, and each of them, represented to the Plaintiff herein that considering her advanced age, should she become ill, hospitalized or enter a nursing home, her property would be subject to a lien for the purpose of paying the nursing home, hospital and medical bills and she would eventually lose her real property or it would become confiscated by her creditors.

6. That the Defendants, and each of them, further represented to the Plaintiff that she could avoid the potential loss or confiscation of her property by conveying the same to them by Deed, and Defendants further assured Plaintiff that if she made such conveyance they would re-convey the property to her upon her demand.

11. That the Defendants' actions as aforesaid in procuring and inducing the Plaintiff to make a conveyance of her property constituted undue influence, duress and misrepresentation in that:

a. Defendants had destroyed Plaintiff's free will in executing the Deed of January 8, 1985, by frightening and threatening her with the impending loss of her property, not necessarily true.

b. The Defendants' occupied a confidential relationship as sons of the of Plaintiff knowing that their mother, the Plaintiff herein, would place her complete trust and confidence in Defendants' action, however, Defendants have betrayed such trust in falsely assuring their mother they would re-convey the property upon her demand.

c. That Defendants never had intended to re-convey Plaintiff's property but had induced Plaintiff to convey the same so that Defendants could acquire legal title for themselves and to the exclusion of Plaintiff.

d. The transaction was made with inadequate consideration of One ($1.00) Dollar.

In Defendants' motion for summary judgment they allege there are no operative facts in dispute—and that the undisputed facts fail to sustain the Defendants' allegations of improper or undue influence on their mother. Rather, they argue, the undisputed facts show a free and voluntary transfer of the property to them. They argue, too, there is no evidence of any promise to re-convey the property at the Plaintiff's request, and that neither of them had a confidential relationship with their mother which was used to accomplish the transfer.

**II**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(b). Any doubts as to the existence of such issues must be resolved against the moving party and all inferences to be drawn from the underlying facts viewed in the light most favorable to the party opposing the motion. *Hollinger v. Wagner Mining Equipment Corp.*, 667 F.2d 402, 405 (3d Cir.1981). The mere presence in the

complaint of an allegation is not sufficient by itself to avoid summary judgment. *South Ship Bldg. Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 100 (3d Cir.) *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Where the movant relies upon affidavits, depositions or answers to interrogatories to show that there is no genuine issue of material fact, Plaintiff must come forward with affidavits, depositions or answer to interrogatories sufficient to contradict movant's showing. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Accordingly, summary judgment may be granted where there are undisputed facts from which only one conclusion may be reasonably drawn. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). In fleshing out the reasonableness standard the Third Circuit has recently stated:

> "[i]f the Defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented."

*Michelson v. Exxon Research and Engineering Co.*, 808 F.2d 1005 (3d Cir.1987) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Additionally, the Court stated:

> "[t]he mere scintilla of evidence in support of the Plaintiff's position will be insufficient: there must be evidence on which the jury could reasonably find for the Plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the Plaintiff is entitled to a verdict".

*Id.*

Here, we find no operative facts are in dispute and indeed, we take the facts upon which we base our judgment principally from the Plaintiff's own deposition and that of her proposed witnesses, including the undisputed testimony of her former lawyer, who prepared the deed transferring the property to the Defendants.

Pennsylvania law, which guides our consideration of this case, provides the following guidance:

> The power to set aside a deed should be invoked only where manifest justice requires it. In order to void a deed on the ground that it was executed under fraudulent misrepresentations by the grantees, evidence of the grantees' fraud must be clear, precise and convincing.

> Undue influence which will avoid a deed is such influence as is obtained by excessive importunity, superiority of will or mind, or by any other means constraining the grantor to do what he is unable to refuse, and whether such improper influence has been exercised will usually be inferred from the circumstances, such as the situation of grantor and his relation to others, his condition of health, and its effect upon the body and mind, his dependence upon, and subjection to, persons claimed to have influenced him and their opportunity to wield such influence.

> The burden of proving undue influence rests upon the party asserting it unless that party can prove a confidential relationship between the grantor and the grantee, in which case the burden of proof must shift to the party asserting the validity of the deed to prove it was obtained by the free, voluntary and intelligent act of the grantor.

> The issue of whether a confidential relationship existed between a grantor and a grantee only arises if the party attacking the validity of the deed has not adduced evidence sufficient to support a finding of undue influence without benefit of the presumption arising out of the confidential relationship.

*See Shupp v. Brown*, 293 Pa.Super. 412, 439 A.2d 178, (1981); *Sendick v. Matvey*, 391 Pa. 286, 138 A.2d 92, (1957); *Thomas v. Seaman*, 451 Pa. 347, 304 A.2d 134, (1973).

### III

The undisputed facts reveal that the total conduct of the Defendant, Benedict J. Shedlock, which Plaintiff would have us find was tantamount to undue influence, amounted to three telephone calls from his home in Colonia, New Jersey, to his mother in Duryea, Pennsylvania. Plaintiff attempts to couple these three telephone calls with the fact of her age, (84 at the present time), and her physical condition to make out her case.

There is not even a hint of evidence in this case that the other Defendant, Joseph B. Shedlock, in any way exercised any influence over his mother which had any bearing on the transfer of the property.

There is no dispute in this case, of course, as to the Plaintiff's age, but that alone is certainly insufficient to conclude that she was the subject of undue influence. Indeed, her own deposition reveals that she is a woman of strong conviction and determination and able to understand her own business affairs. The undisputed facts again reveal that she was able to get to her lawyer's office on February 8, 1985, with the help of a neighbor who provided transportation; that she gave specific and direct instructions to the lawyer as to what she wanted to do with her properties in spite of his admonitions that perhaps such a move would not be wise or economically appropriate; and that she had the specific intention to transfer the property involved in order to avoid the payment of any taxes to the state in the event of her death or in order to evade any hospital or nursing care expenses in the event of her illness. (*See* Deposition of Frances Shedlock at pages 18 to 20; Deposition of Attorney Vincent M. Quinn, page 7 to 9; and Deposition of James Ridolfi, pages 4 and 5).

The undisputed facts also reveal that at no time did Benedict Shedlock ever direct or advise the Plaintiff to transfer the property to him. At the very best, the facts show that the Defendant advised his mother to get her "name off these two homes", because "they" might put her in a nursing home and at that time the Government would take everything from her, including her properties. The facts further reveal that there were a number of children in this family besides the Defendants and that at no time did the Defendants suggest transfer of the property to themselves or to anyone else in particular. The facts further reveal that the Plaintiff was counseled by her lawyer about the propriety of such a transfer and informed her that any potential savings to be accomplished by the transfer would be minimal. (See Quinn deposition at p. 7)

There are no facts, at all, upon which any finding or inference could be made that either of the Defendants made any promises to return the property to the Plaintiff once she had deeded the property to them. The concept of proof of any confidential relationship is completely undershot by the Plaintiff's own undisputed testimony that the Defendant, Benedict Shedlock, lived in New Jersey, and the Defendant, Joseph Shedlock, lived in Tennessee, and that she heard from each of them only two or three times yearly. (See Deposition of Frances Shedlock at p. 42).

The same undisputed operative facts in this case considered most strongly against the moving party, reveal that one of the Defendants, Benedict Shedlock, had several telephone conversations with his mother, the Plaintiff, in which he discussed the possibility of the "state" taking his mother's property either for nursing care expenses or taxes. They further show that the Plaintiff was determined not to allow that to happen and decided to transfer her property to others in the family to prevent that possibility.

There is nothing upon which a finding could be made by the Court (since this matter is in Equity it would be a non jury trial) that there was any undue influence exercised by either of the Defendants to accomplish the transfer of these properties, nor is there anything in the record that would establish that a confidential relationship existed between the Defendants and the Plaintiff which played any role whatsoever in the Plaintiff's determination to transfer this property. A verdict, there-

**1116**

fore, could not reasonably be found in Plaintiff's favor.

Surely, one has to be moved by this melancholy family situation and the hope is always that matters such as these could be resolved in the privacy of the family circle, but this is an imperfect world and sadly these matters often become public fare. In this particular case, however, the law as applied to the facts outlined for the Court do not allow for the result sought by the Plaintiff and we are commanded therefore to enter judgment, as sought, on behalf of the Defendants.